UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER BUENO, an individual, and RICHARD PARKER, an individual,<br><br>                              Plaintiffs,<br><br>v.<br><br>MERCK & CO., INC., a New Jersey Corporation; MERCK SHARP & DOHME LLC[1], a New Jersey Corporation; ORGANON & CO., a Delaware Corporation; ORGANON LLC, a Delaware Limited Liability Company; and DOES 1-10, inclusive,<br><br>                              Defendants. | Case No.: 3:22-cv-00522-H-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 6.] |

On March 3, 2022, Plaintiffs Spencer Bueno ("Bueno") and Richard Parker ("Parker") filed their complaint in the Superior Court of the State of California, County of San Diego. (Doc. No. 1-2, "Compl.")  The case was subsequently removed and then transferred to this Court. (Doc. No. 7.)  Prior to transfer, on April 22, 2022, Defendants Merck & Co., Inc. ("Merck"), Merck Sharp & Dohme LLC ("MSD"), Organon & Co., and Organon LLC filed a motion to dismiss the complaint. (Doc. No. 6.)  Plaintiffs filed an

---

[1] Plaintiffs named Merck Sharp & Dohme Corp. as a defendant in this suit.  In their reply brief, Defendants informed the Court that Merck Sharp & Dohme Corp. is now known as Merck Sharp & Dohme LLC.  (Doc. No. 14.)

1

opposition on May 9, 2022. (Doc. No. 8.) On May 23, 2022, Defendants filed a reply in support of their motion. (Doc. No. 14.) Pursuant to its discretion under Local Rule 7.1(d)(1), the Court determined that Defendants' motion was fit for resolution without oral argument and submitted the motion on the Parties' papers. (Doc. No. 15.)

## BACKGROUND

Defendants Merck and MSD (the "Merck Defendants") are New Jersey corporations that manufacture and sell pharmaceutical drugs. (Compl. ¶ 12-13.) One of these drugs is Singulair, which includes the active ingredient montelukast. (Id. ¶ 2.) Merck patented Singulair in 1996 and the Merck Defendants began selling Singulair in 1998 after it was approved by the FDA. (Id. ¶¶ 2, 28.) The Merck Defendants were the exclusive manufacturers, distributors, and sellers of Singulair from 1998 to mid-2012. (Id. ¶ 13.) On August 3, 2012, Merck's patent expired and generic montelukast drugs entered the market. (Id. ¶ 28.) At some point after March 4, 2020, the Merck Defendants assigned some unspecified rights, liabilities, or control over Singulair to their subsidiary, Organon & Co., and its subsidiary, Organon LLC (the "Organon Defendants"). (Id. ¶ 14.) The Organon Defendants are organized under the laws of Delaware and have their principal places of business in New Jersey. (Id.)

Singulair is prescribed for the treatment of asthma, the prevention of exercise-induced bronchoconstriction, and relief of symptoms of allergic rhinitis. (Id. ¶ 1.) Plaintiffs claim they have developed neuropsychiatric injuries "as a result of ingesting . . . Singulair." (Id.) Plaintiff Spencer Bueno was "prescribed Singulair from 2019 to 2021." (Id. ¶ 8.) Bueno's prescriptions "were filled with brand and/or generic Singulair." (Id.) Bueno "used Singulair as prescribed" and "suffered neuropsychiatric injury including depression, anxiety, and suicidality." (Id.) Plaintiff Richard Parker was "prescribed Singulair from 2018 to 2020." (Id. ¶ 9.) Parker's prescriptions "were filled with brand and/or generic Singulair." (Id.) Parker "used Singulair as prescribed" and "suffered neuropsychiatric injury including suicidality, depression, and a suicide attempt." (Id.) Plaintiffs are residents of San Diego County, California and "were prescribed Singulair in

California, . . . ingested Singulair in California and sustained injuries therefrom in California." (Id. ¶ 7.) Plaintiffs allege that if their prescribers had known that Singulair would cause neuropsychiatric events, then their prescribers would not have prescribed Singulair. (Id. ¶ 11.)

Plaintiffs allege that the Defendants ignored evidence that Singulair causes neuropsychiatric events. (Id. ¶ 2.) The Singulair label originally contained no warnings regarding neuropsychiatric events. (Id. ¶ 3.) Since its introduction, Defendants have added warnings to Singulair's product label. (Id.) On March 4, 2020, the Food & Drug Administration required that the strongest type of warning (a "Black Box Warning") be added to Singulair's label regarding neuropsychiatric events. (Id.)

## DISCUSSION

Plaintiffs assert claims for design defect (Count I), failure to warn (Count II), negligence (Count III), negligent misrepresentation (Count IV), breach of express warranty (Count V), and breach of implied warranty (Count VI). (Id. ¶¶ 104-234.) Defendants move to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(2) on the basis that this Court lacks personal jurisdiction over them and most claims pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiffs have failed to state a claim for which relief may be granted. As an initial matter, Plaintiffs concede that their design defect claim (Count I) and manufacturing defect claim (part of Count III) should be dismissed for failure to state a claim. (Doc. No. 8 at 1-2.) Accordingly, the Court dismisses those claims. The Court will now turn to the disputes between the parties.

### I. Plaintiffs' Allegations Concerning Their Use of Singulair

The Court begins with Plaintiffs' allegations that they ingested Singulair rather than generic montelukast. This allegation is central to Defendants' motion. Defendants only dispute personal jurisdiction if Plaintiffs ingested generic montelukast. Further, Plaintiffs concede that if they only ingested generic montelukast, then their claims for breach of express warranty (Count V) and breach of implied warranty (Count VI) should be dismissed.

Case 3:22-cv-00522-H-BLM   Document 16   Filed 09/08/22   PageID.471   Page 4 of 13

The Court begins with the pleading requirements of Rule 12(b)(2). Plaintiffs bear the burden of demonstrating personal jurisdiction, but they are only required to make a "prima facie showing of jurisdictional facts" to withstand dismissal. In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013) (citations omitted). Further, the Court "must accept as true all uncontroverted allegations in the plaintiff's complaint and must resolve all disputed facts in favor of the plaintiff." Burri Law PA v. Skurla, 35 F.4th 1207, 1213 (9th Cir. 2022) (citations omitted). The Court may consider evidence in affidavits and declarations in determining personal jurisdiction and it "may not assume the truth of allegations that are contradicted by affidavit." Macias v. LG Chem Ltd., 2021 WL 780478, at *1 (C.D. Cal. Feb. 28, 2021) (citations omitted).

Plaintiff Spencer Bueno alleges that he was "prescribed Singulair from 2019 to 2021." (Compl. ¶ 8.) Bueno "used Singulair as prescribed" and "suffered neuropsychiatric injury including depression, anxiety, and suicidality." (Id.) Plaintiff Richard Parker alleges that he was "prescribed Singulair from 2018 to 2020." (Id. ¶ 9.) Parker "used Singulair as prescribed" and "suffered neuropsychiatric injury including suicidality, depression, and a suicide attempt." (Id.) Plaintiffs are residents of San Diego County, California and "were prescribed Singulair in California, . . . ingested Singulair in California and sustained injuries therefrom in California." (Id. ¶ 7.) However, Plaintiffs also express some uncertainty regarding whether they ingested Singulair. For example, Bueno and Parker allege that their prescriptions "were filled with brand and/or generic Singulair." (Id. ¶¶ 8-9.) Plaintiffs acknowledge that their breach of warranty claims are only viable to the extent they used Singulair and concede that "[i]f discovery shows that Plaintiffs used only generic montelukast, Plaintiffs will dismiss the warranty claims." (Doc. No. 8 at 23.)

Defendants contend that Plaintiffs fell short of alleging that they ingested Singulair. (Doc No. 14 at 1.) Defendants speculate that Plaintiffs "likely never" ingested Singulair because "California pharmacists substitute the generic medication for the brand-name medication as a matter of course[.]" (Doc. No. 6 at 1.) Defendants argue that this Court should require Plaintiffs "to produce proof of use of Singulair or generic montelukast via

4

3:22-cv-00522-H-BLM

prescription and pharmacy records" before deciding this motion. (Id. at 3.)

The Court concludes that Plaintiffs have carried their burden to make a prima facie showing of jurisdictional facts. Plaintiffs allege they ingested Singulair: "Plaintiffs ingested Singulair in California." (Compl. ¶ 7.) Defendants' suggestion that Plaintiffs did not ingest Singulair is mere speculation based on purported facts that are not in the record before the Court. Defendants do not provide any affidavits, declarations, or any other support for their theory that Plaintiffs were prescribed generic montelukast. In sum, Defendants do not present any evidence that contests Plaintiffs' allegations that they used Singulair. The fact that Plaintiffs hedge their argument in their opposition brief does not erase Plaintiffs' allegations in their complaint.[2]

Defendants' argument does not fare better in the context of a motion for failure to state a claim. "In reviewing a motion to dismiss pursuant to Rule 12(b)(6), we must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014) (citation omitted). Accordingly, the Court accepts as true Plaintiffs' allegations that they were prescribed Singulair and ingested Singulair and resolves the ambiguities regarding whether their prescriptions were filled with "brand and/or generic Singulair" in their favor. Courts do not accept as true allegations that are "unwarranted deductions of fact" or "unreasonable inferences," but neither of these are present in Plaintiffs' allegations. In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th

---

[2] The Court declines to order the jurisdictional discovery sought by Defendants. This is a unique request because Defendants are seeking discovery to dispute Plaintiffs' prima facie case for personal jurisdiction, rather Plaintiffs seeking discovery to establish personal jurisdiction. Defendants do not cite to a court that has ordered discovery in this situation. The Court, in its discretion, declines to do so here. Am. W. Airlines, Inc. v. GPA Grp., Ltd., 877 F.2d 793, 801 (9th Cir. 1989) ("It is clear that the question of whether to allow discovery is generally within the discretion of the trial judge."). Further, as explained in more detail elsewhere in this order, this Court has personal jurisdiction over the Defendants even if fact discovery shows that Plaintiffs only ingested generic montelukast.

Cir. 2008). Plaintiffs reasonably infer that they ingested Singulair since that was the medication they were prescribed. Plaintiffs' allegations are not contradicted by any evidence properly before the Court. Defendants are essentially asking the Court to apply a heightened pleading standard because they are skeptical of the Plaintiffs' allegations. The Court sees no legal basis to do so. The Defendants' arguments are best suited for a motion for summary judgment when the record is more fully developed. The Court will now consider the merits of Defendants' motion.

## II. Personal Jurisdiction

Defendants do not argue that this Court lacks personal jurisdiction if Plaintiffs ingested Singulair. (See Doc. No. 6 at 3.) However, since fact discovery may show that Plaintiffs only ingested generic montelukast, the Court will briefly address the issue of whether it has personal jurisdiction over the Defendants if that is the case.[3] The Court addressed this issue in detail in a recent order in Whaley v. Merck & Co., Inc., et al., 3:21-cv-01985-H-BLM, Order Denying Amended Motion to Dismiss (Apr. 11, 2022) ("Whaley Order"). Defendants urge this Court to revisit its analysis in Whaley. Defendants do not suggest that there are substantive differences between this case and Whaley; rather, they insist that the Whaley Order was wrong. The Court disagrees. The Court will briefly summarize its reasoning in Whaley and apply it to this case.

The key question in both cases is whether a plaintiff's warning label liability claim "arises out of or relates to" the Defendants' forum-related activities.[4] Two precedential cases were central to this Court's opinion in Whaley. First, the California Supreme Court's decision in T.H. v. Novartis Pharms. Corp., 407 P.3d 18, 29 (Cal. 2017) recognized that "a brand-name drug manufacturer has the duty under California law to warn of the risks about

---

[3] This issue has been fully briefed as it was a primary focus of the Parties' submissions.

[4] Like in Whaley, only specific jurisdiction is at issue and Defendants challenge Plaintiffs' jurisdictional showing under the second element of the specific jurisdiction test. Whaley Order at 7-8.

6

which it knew or reasonably should have known, regardless of whether the consumer is prescribed the brand-name drug or its generic 'bioequivalent.'" This theory of liability flows from federal law, which aligns the warning labels on a brand-name drug and its generic equivalent and places a greater duty on the brand-name manufacturer. Id. at 21-23.

The second decision is the Supreme Court's opinion in Ford Motor Co. v. Montana Eighth Judicial Dist. Ct., 141 S. Ct. 1017 (2021), which clarified the second element of the specific jurisdiction test. In Ford, the Supreme Court considered two cases in which state courts held that they had personal jurisdiction over a non-resident (Ford) in product-liability suits. Id. at 1022. Ford asserted that the state courts lacked personal jurisdiction over it because the design, manufacture, or sale of the allegedly defective vehicles did not occur in the forum states. Id. at 1023. Ford argued that jurisdiction attaches "only if the defendant's forum conduct gave rise to the plaintiff's claims." Id. at 1026 (emphasis omitted). The Supreme Court rejected that view: "[n]one of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." Id. at 1026. The Court made it clear that its rulings have never limited jurisdiction to where a product was designed, manufactured, or first sold. Id. at 1027-28. In Ford, the plaintiffs were allegedly injured by Ford vehicles—just not Ford vehicles that were designed, manufactured, or bought in the forum states. But Ford had "advertised, sold, and serviced" the same car models in the forum states for "many years[.]" Id. at 1028. And the Supreme Court ultimately considered Ford's activities in the forum states, including the marketing, servicing, and selling of the same vehicle models that were involved in the underlying litigation, as sufficiently related to plaintiffs' claims. Id. at 1028. In Whaley, plaintiffs alleged that the defendants engaged in extensive marketing, advertising, and sales activities related to Singulair in California. This Court applied Ford to conclude that these activities were sufficiently related to Plaintiffs' claim of warning label liability.

Defendants repeat many of the arguments in this case that Merck and MSD raised in

Whaley.  The Court continues to find these arguments unpersuasive.  Defendants contend that only their warning-label activities are relevant for the jurisdictional inquiry.  But Ford instructs that a strict causal relationship between the defendant's jurisdictional activity and the litigation is not necessary.  Id. at 1026.  The Supreme Court rejected Ford's argument that the only relevant jurisdictional facts for the plaintiffs' products liability claims were the design, manufacture, and sale of the vehicles at issue.  Instead, the Supreme Court found Ford's other advertising, marketing, and sales activities to be jurisdictionally relevant.

The Defendants also assert that the Court errs by linking their Singulair activities to Plaintiffs' cause of action, which they style as being about generic montelukast.  Defendants argue that Ford concerned an injury resulting from the defendant's product and this case concerns Plaintiffs' claims about a different product made by a competitor.  (Doc. No. 14 at 7-8.)  But as the Court explained in Whaley and reiterates here, Plaintiffs' warning label liability claims are about Singulair.  Warning label liability is a cause of action against the name-brand manufacturer for the name-brand drug's warning label that flows by function of law to its generic counterpart.  Defendants assert that this view "conflates California's recognition of warning label liability with personal jurisdiction." (Doc. No. 14 at 6.)  The Court disagrees.  Plaintiffs still need jurisdictional allegations sufficient for the Court to have specific jurisdiction, but under the warning label liability claim, those allegations can be about Defendants' Singulair activities.  Underlying Defendants' motion is the assertion that Defendants should not be liable if Plaintiffs ingest a generic version of their product, but this argument is against warning label liability itself—something this Court cannot disturb—rather than about jurisdiction.

Defendants also contend that Ford does not apply because they, unlike Ford, did not receive a benefit from their activities in California.  (Doc. No. 14 at 8.)  But this argument hinges on Defendants' errant view that Plaintiffs' claim is about generic montelukast and not Singulair.  Defendants, like Ford, benefited from engaging in advertising, marketing, and sales of their product in the forum.  Finally, Defendants argue that the Court should

reexamine various opinions that this Court previously considered in Whaley. The Court continues to view its analysis of those opinions to be correct for the reasons set forth in Whaley and declines to repeat that analysis here. (Whaley Order at 10, 16-17.)[5]

In brief, Plaintiffs allege following facts concerning Defendants' California-based activities. Defendants are registered with the California Secretary of State to do business in California. (Compl. ¶¶ 12, 14.) The Merck Defendants "manufactured, marketed and sold millions of Singulair pills, including the actual Singulair pills that Plaintiffs used in California during and prior to 2012." (Id. ¶ 17.) "Since 2012, the Merck defendants have continued to manufacture, market, and sell Singulair in California at least into 2020 and either the Merck Defendants or Organon did so after 2020." (Id. ¶ 18.) Either the Merck Defendants or Organon "may have subsequently manufactured, marketed and sold the actual Singulair pills used by Plaintiffs in California." (Id. ¶ 19.) Merck Defendants "engaged in an extensive campaign" to educate physicians about Singulair and misrepresented Singulair's safety during this campaign. (Id. ¶ 20.) The Merck Defendants engaged in direct-to-consumer advertising in California through print advertisements in magazines and television advertising. (Id. ¶ 21.)[6] In short, these activities are similar to

---

[5] Defendants contend that this Court placed too much weight on the district court opinion in Quinn-White v. Novartis Pharms. Corp., 2018 WL 6133637 (C.D. Cal. Mar. 7, 2018). This Court considered Quinn-White to be helpful because the district court in that case found various categories of California-related activities to be jurisdictionally relevant in the context of a warning label liability suit. (Whaley Order at 13.) Defendants argue that Quinn-White should be minimized because it was issued before Ford. This Court neither views Quinn-White to be in tension with Ford nor central to its decision in Whaley or in this case.

[6] Defendants argue that even if their Singulair-related activities in California are jurisdictionally relevant, Plaintiffs have failed to sufficiently allege that such activities took place. (Doc. No. 14 at 6-7.) Defendants contend that Plaintiffs' lack of allegations distinguishes this case from Whaley. (Id.) The Court agrees that Plaintiffs' complaint provide less detail about the Merck Defendants' activities in California than the First Amended Complaint in Whaley. (Whaley Order at 14.) But Plaintiffs' allegations are still

9

those in Ford. Further, Defendants had sufficient warning that they may be brought into court in California because Defendants sold Singulair in California for decades and did so after Congress enacted the current warning label system in which generic drugs mirror the labels of their brand-name bioequivalent drugs. PLIVA, Inc. v. Mensing, 564 U.S. 604, 612-13 (2011). In sum, the Court concludes that Defendants' forum-based advertising, marketing, and selling of Singulair—the product that is at the heart of Plaintiffs' claim—are jurisdictional activities under Ford that are within the "real limits" of the "relates to" element of the specific jurisdiction test. Accordingly, the Court has personal jurisdiction over Defendants for the purposes of Plaintiffs' warning label liability claim even if Plaintiffs only ingested generic montelukast.

### III.     Failure to State a Claim

Finally, the Court will exam the Defendants' arguments in favor of dismissal on the basis that the Plaintiffs failed to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Dismissal under Rule 12(b)(6) is appropriate where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

#### A.     Failure to Warn Claims (Counts II and III)

Plaintiffs assert claims for failure to warn under theories of strict liability and negligence. (Compl. ¶¶ 146-85.) Defendants contend that Plaintiffs fail to sufficiently allege a claim under the learned intermediary theory. (Doc. No. 6 at 21-22.) California

---

sufficient to show minimum contacts with California such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.

law recognizes that "in the case of prescription drugs, the duty to warn runs <u>to the physician</u>, not the patient." Carlin v. Superior Ct., 920 P.2d 1347, 1354 (Cal. 1996). The parties disagree as to what facts Plaintiffs must plead to state a claim under this theory. (Doc. No. 6 at 21-22; Doc. No. 8 at 19-20.).

Defendants cite <u>Fischer v. Boston Sci. Corp.</u>, 2020 WL 2300138 (C.D. Cal. Mar. 25, 2020) and <u>Tapia v. Davol, Inc.</u>, 116 F. Supp. 3d 1149 (S.D. Cal. July 28, 2015) for the proposition that Plaintiffs must (i) identify their prescribing physician, (ii) explain how the existing warnings were inadequate, and (iii) explain how a different warning would have changed their physician's prescribing decisions. (Doc. No. 6 at 22.) In <u>Fischer</u>, the district court concluded that a plaintiff failed to plead a claim for negligence and failure to warn when she had not pled "any facts" including the identity of her physician, what warnings the physician received, and how the disclosed warnings were inadequate. 2020 WL 2300138, at *3. In <u>Tapia</u>, the district court concluded that the plaintiff failed to plead a failure to warn claim when he did not allege that the defendants failed to warn his prescribing physician or that his prescribing physician would not have treated him with the product if the warnings had been given. 116 F. Supp. 3d at 1158-59. Defendants argue that <u>Marroquin v. Pfizer, Inc.</u>, 367 F. Supp. 3d 1152 (E.D. Cal. Feb. 14, 2019) is analogous to this case. In <u>Marroquin</u>, the district court concluded that the plaintiff failed to state a claim when she provided "no allegations that explain how or why the warnings provided were inadequate." <u>Id.</u> at 1161.

Collectively, these cases state that a plaintiff must allege (i) that the existing warnings were inadequate and (ii) that a different warning would have changed the plaintiff's physician's prescribing decision. Plaintiffs sufficiently plead both of these requirements. Plaintiffs allege that the existing warnings were deficient and failed to communicate the dangers of Singulair or provide instructions that were appropriate and adequate to "render the product safe for its ordinary, intended, and reasonably foreseeable uses." (Compl. ¶ 162.) Defendants could have "provided adequate warnings or instructions regarding the full and complete risks of Singulair and its active ingredient

montelukast because Defendants knew or should have known of the unreasonable risks of harm associated with the use of Singulair and montelukast." (Id. ¶ 151.) Like in Whaley, Plaintiffs in this case suggest that Defendants should have strengthened the warnings on Singulair to the level applied in the Black Box warning much earlier. (Id. ¶¶ 3-4, 6, 77-83.) Further, Plaintiffs allege that their prescribers were not warned of "the nature and extent of injuries that could result from the intended use of Singulair" and that they "reasonably relied on [Defendants'] representations" that "Singulair/montelukast was both safe and effective; consumption of Singulair/montelukast would not result in neuropsychiatric side effects; and Singulair/montelukast was safe for their intended use . . . ." (Id. ¶¶ 182, 190-95.) "Had [Plaintiffs'] prescribers known that Singulair could cause Plaintiffs to suffer neuropsychiatric events, the prescriber would not have prescribed Singulair . . . ." (Id. ¶ 11.) This Court does not view the identification of Plaintiffs' treating physicians as an absolute pleading requirement. Whaley Order at 24; see also Jenkins v. Bristol-Myers Squibb, 2015 WL 5012130, at *5 (E.D. La. Aug. 21, 2015); Harris v. Merck & Co., Inc., 2012 WL 5384720, at *4 (W.D. La. Nov. 1, 2012). Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' failure to warn claims.[7]

    B.  Breach of Warranty Claims (Counts V and VI)

Like the failure to warn claim, a patient may bring a breach of warranty claim concerning prescription drugs under the learned intermediate theory. Hannan v. Boston Sci. Corp., 2020 WL 2128841, at *10 (N.D. Cal. May 5, 2020) (citing Carlin, 920 P.2d at 1355). Defendants raise two arguments for dismissing Plaintiffs' breach of warranty

---

[7] Plaintiffs also argue that they may pursue their failure to warn claims through an exception to the learned intermediary doctrine as described in the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 6 (1998). (Doc. No. 8 at 21-23.) Plaintiffs describe this as a "direct-to-consumer advertising" exception and suggest that it is valid under California law. (Id.) Defendants counter that California courts have not recognized this exception. (Doc. No. 14 at 3-4.) The Court declines to reach this issue since Plaintiffs have stated a claim for relief under the learned intermediary theory.

claims: (i) Plaintiffs fail to allege that they ingested Singulair and (ii) Plaintiffs fail to allege that their prescribers relied on any warranties made by the Defendants.[8]  For the reasons previously discussed, Plaintiffs adequately allege that they ingested Singulair.  Plaintiffs also allege that their prescribers relied on the warranties provided by the Defendants and that the warranty was breached.  Plaintiffs state that Defendants represented to Plaintiffs' physicians and prescribers "via . . . packaging" that Singulair was both safe and effective, that consumption of Singulair would not result in neuropsychiatric side effects, and that Singulair was safe for its intended use.  (Compl. ¶ 190.)  Plaintiffs further allege that their physicians and prescribers "reasonably relied on these representations[.]"  (Id. ¶ 195.)[9]

### C.  Negligent Misrepresentation (Count IV)

Defendants contend that Plaintiffs do not state a claim for negligent misrepresentation because their underlying failure to warn claims fail.  As discussed, this Court concludes that Plaintiffs adequately state a claim for failure to warn.  Thus, the Court denies Defendants' motion to dismiss Plaintiffs' negligent misrepresentation claim.

### CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss.  The Court dismisses Plaintiffs' claims for design defect (Count I) and manufacturing defect (part of Count III).  The Court denies Defendants' motion as to all other claims.

**IT IS SO ORDERED.**

DATED: September 8, 2022

MARILYN L. HUFF, Senior District Judge
UNITED STATES DISTRICT COURT

---

[8] Plaintiffs acknowledge that their claims for breach of warranty should be dismissed if discovery shows that they ingested generic montelukast instead of Singulair.  (Doc. No. 8 at 23.)

[9] Plaintiffs also contend that the "direct-to-consumer advertising" exception can be a basis for a breach of warranty claim.  The Court does not reach this issue.