UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER BUENO, an individual, and RICHARD PARKER, an individual,<br><br>          Plaintiffs,<br><br>v.<br><br>MERCK & CO., INC., a New Jersey Corporation; MERCK SHARP & DOHME CORP., a New Jersey Corporation; ORGANON & CO., a Delaware Corporation; ORGANON LLC, a Delaware Limited Liability Company; and DOES 1-10, inclusive,<br><br>          Defendants. | Case No.: 3:22-cv-00522-H-BLM<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF SPENCER BUENO'S CLAIMS FOR LACK OF PERSONAL JURISDICTION**<br><br>[Doc. No. 62.] |

   On July 20, 2023, Defendants Merck & Co., Inc. ("Merck"), Merck Sharp & Dohme LLC[1] ("MSD"), Organon & Co., and Organon LLC (collectively, "Defendants") filed a motion to dismiss Plaintiff Spencer Bueno's ("Bueno") claims for lack of personal jurisdiction. (Doc. No. 62.) On August 7, 2023, Bueno filed a response in opposition to

---

[1] Plaintiffs Spencer Bueno and Richard Parker named Merck Sharp & Dohme Corp. as a defendant in this suit. Defendants have since informed the Court that Merck Sharp & Dohme Corp. is now known as Merck Sharp & Dohme LLC. (Doc. Nos. 14, 62-1.)

1

Defendants' motion. (Doc. No. 66.) On August 14, 2023, Defendants filed a reply in support of their motion. (Doc. No. 68.) On October 11, 2023, the Court, pursuant to its discretion under Local Rule 7.1(d)(1), submitted the motion on the parties' papers. (Doc. No. 70.) For the reasons below, the Court denies Defendants' motion to dismiss Bueno's claims for lack of personal jurisdiction.

I.   BACKGROUND

Defendants Merck and MSD (the "Merck Defendants") are New Jersey corporations that manufacture and sell pharmaceutical drugs. (Doc. No. 1-2 ¶¶ 12–13.) One of these drugs is Singulair, which includes the active ingredient montelukast. (Id. ¶ 2.) Singulair is prescribed for the treatment of asthma, the prevention of exercise-induced bronchoconstriction, and relief of symptoms of allergic rhinitis. (Id. ¶ 1.) Merck patented Singulair in 1996 and the Merck Defendants began selling Singulair in 1998 after it was approved by the FDA. (Id. ¶¶ 2, 28.) The Merck Defendants were the exclusive manufacturers, distributors, and sellers of Singulair from 1998 to mid-2012. (Id. ¶ 13.) On August 3, 2012, Merck's patent expired and generic montelukast drugs entered the market. (Id. ¶ 28.) At some point after March 4, 2020, the Merck Defendants assigned some unspecified rights, liabilities, or control over Singulair to their subsidiary, Organon & Co., and its subsidiary, Organon LLC (the "Organon Defendants"). (Id. ¶ 14.) The Organon Defendants are organized under the laws of Delaware and have their principal places of business in New Jersey. (Id.)

On March 3, 2022, Plaintiffs Bueno and Richard Parker ("Parker") filed their complaint in the Superior Court of the State of California, County of San Diego. (Doc. No. 1-2.) The case was subsequently removed and then transferred to this Court. (Doc. Nos. 1, 7.) The complaint asserts six causes of action: (1) strict liability—design defect (Count I); (2) strict liability—failure to warn (Count II); (3) negligence (Count III); (4) negligent misrepresentation (Count IV); (5) breach of express warranty (Count V); and (6) breach of implied warranty (Count IV). (Doc. No. 1-2 ¶¶ 104–234.) Plaintiffs claim that they have developed neuropsychiatric injuries "as a result of ingesting . . . Singulair."

(Id. ¶ 1.)  In their complaint, Bueno alleges that he was "prescribed Singulair from 2019 to 2021." (Id. ¶ 8.)  Bueno alleges that his prescriptions "were filled with brand and/or generic Singulair." (Id.)  Bueno further alleges that he "used Singulair as prescribed" and "suffered neuropsychiatric injury including depression, anxiety, and suicidality." (Id.)  Similarly, Parker alleges that he was "prescribed Singulair from 2018 to 2020." (Id. ¶ 9.)  Parker alleges that his prescriptions "were filled with brand and/or generic Singulair." (Id.)  Parker further alleges that he "used Singulair as prescribed" and "suffered neuropsychiatric injury including suicidality, depression, and a suicide attempt." (Id.)  Plaintiffs allege that they are both residents of San Diego County, California and "were prescribed Singulair in California, . . . ingested Singulair in California and sustained injuries therefrom in California." (Id. ¶ 7.)  Moreover, Plaintiffs allege that if their prescribers had known that Singulair would cause neuropsychiatric events, then their prescribers would not have prescribed Singulair. (Id. ¶ 11.)  Plaintiffs allege that the Defendants ignored evidence that Singulair causes neuropsychiatric events.  (Id. ¶ 2.)

Originally, the Singulair label contained no warnings regarding neuropsychiatric events. (Id. ¶ 3.)  Since its introduction, however, Defendants have added warnings to Singulair's product label regarding neuropsychiatric events. (Id.)  On March 4, 2020, the Food & Drug Administration required Defendants to add the strongest type of warning (a "Black Box Warning") to Singulair's label regarding neuropsychiatric events. (Id.)

On April 22, 2022, Defendants moved to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(2) on the basis that the Court lacked personal jurisdiction over them and moved to dismiss most claims pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiffs failed to state a claim for which relief may be granted. (Doc. No. 6.)  On September 8, 2022, the Court granted in part and denied in part Defendants' motion. (Doc. No. 16.)  The Court dismissed Plaintiffs' claims for strict liability—design defect (Count I) and manufacturing defect (part of Count III). (Id.)  The Court denied Defendants' motion as to all other claims. (Id.)

By the present motion, Defendants move to dismiss Bueno's remaining claims for

lack of personal jurisdiction. (Doc. No. 62.) Specifically, Defendants argue that discovery has now made it clear that personal jurisdiction over Defendants does not exist with respect to Bueno's remaining claims because Bueno was prescribed montelukast in Florida, Bueno ingested montelukast in Florida, and Bueno was allegedly injured from montelukast in Florida. (Doc. No. 62-1 at 10.)

## II.    DISCUSSION

"[A] party must raise the [Rule 12(b)(2)] defense either (1) in a Rule 12 motion or (2) in a responsive pleading or in an amendment allowed by Rule 15(a)(1)." McCurley v. Royal Seas Cruises, Inc., No. 17-cv-00986-BAS-AGS, 2019 WL 3006469, at *4 (S.D. Cal. July 10, 2019) (citations omitted). "An exception to this strict rule is when such a defense was unavailable to defendants at the time they filed their initial motion" or responsive pleading. McKee v. Audible, Inc., No. 17-cv-01941-GW-EX, 2018 WL 11263238, at *10 (C.D. Cal. Mar. 12, 2018) (citations omitted). "A defense is considered 'available' unless 'its legal basis did not exist at the time of the answer or pre-answer motion, or the complaint does not contain facts sufficient to indicate that a defense was possible.'" McCurley v. Royal Seas Cruises, Inc., 331 F.R.D. 142, 164–65 (S.D. Cal. 2019) (citations omitted) (quoting Gilmore v. Palestinian Interim Self-Gov't Auth., 843 F.3d 958, 964 (D.C. Cir. 2016)).

As an initial matter, Defendants argue that the present motion is procedurally proper because Bueno's "false allegations in his Complaint regarding issues so fundamental to his case . . . rendered Defendants' current personal jurisdiction defense unavailable at the time they filed their initial motion to dismiss this case." (Doc. No. 62-1 at 14.) Specifically, Defendants argue that discovery revealed that Bueno was prescribed montelukast in Florida, Bueno ingested montelukast in Florida, and Bueno was allegedly injured from montelukast in Florida. (See id.) Because Defendants' current personal jurisdiction defense is based on information that was unavailable to them at the time of their first defensive action, Defendants' present motion is procedurally proper. See McKee, 2018 WL 11263238, at *10. The Court now turns to the merits of Defendants' motion.

Defendants move to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds that Bueno's claims do not arise out of or relate to Defendants' California-based activities.[2] (See Doc. No. 62-1.)

The plaintiff bears the burden of demonstrating personal jurisdiction. In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013). However, the plaintiff is only required to make a "prima facie showing of jurisdictional facts" to withstand dismissal and the court resolves all disputed facts in favor of the plaintiff. Id. (citations omitted). The court may consider evidence in affidavits and declarations in determining personal jurisdiction and it "may not assume the truth of allegations that are contradicted by affidavit." Macias v. LG Chem Ltd., No. 20-cv-02416-DOC-ADX, 2021 WL 780478, at * 1 (C.D. Cal. 2021) (citations omitted).

Since no federal statute authorizes personal jurisdiction over Defendants, the Court applies California law. See Mavrix Photo, Inc. v. Brand Tech., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." Id. (citations omitted.) "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A court may constitutionally exercise specific personal jurisdiction over a party. Bristol-Myers Squibb Co. v. Superior Ct. of Cal., 137 S. Ct. 1773, 1779–80 (2017).

Specific jurisdiction exists when all three elements of the following test are satisfied:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform

---

[2] Similar to Defendants' first motion to dismiss, only specific jurisdiction is at issue and Defendants challenge Bueno's jurisdictional showing under the second element of the specific jurisdiction test. (See Doc. Nos. 6, 62-1.)

some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted). The plaintiff bears the burden of satisfying the first two elements; then the burden shifts to the defendant to "set forth a compelling case that the exercise of jurisdiction would not be reasonable." Id. at 1211–12 (citation omitted). The plaintiff must establish jurisdiction for each claim asserted against the defendant. Id. at 1211 (citation omitted).

In Ford Motor Co. v. Montana Eighth Judicial Dist. Ct., 141 S. Ct. 1017 (2021), the Supreme Court clarified the second element of the specific jurisdiction test. Specifically, the Supreme Court made it clear that "arise out of" and "relate to" are alternatives: for a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts, even absent causation. 141 S. Ct. at 1026 ("[W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." (citation omitted)). In Ford, the resident plaintiffs were allegedly injured by Ford vehicles in the forum states but were not injured by Ford vehicles that were designed, manufactured, or bought in the forum states. Id. at 1027–28. Moreover, Ford had "advertised, sold, and serviced" the same car models in the forum states for "many years." Id. at 1028. The Supreme Court ultimately found that Ford's activities in the forum states, including the marketing, servicing, and selling of the same vehicle models that were involved in the underlying litigation, were sufficiently related to the resident plaintiffs' claims. Id.

Here, Defendants argue that Bueno's claims do not arise out of or relate to Defendants' California-based activities because discovery revealed that (1) Bueno was prescribed montelukast in Florida; (2) Bueno ingested montelukast in Florida;

///

///

and (3) Bueno was allegedly injured from montelukast in Florida.[3] (Doc. No. 62-1.) In support, Defendants point to medical records indicating that two Florida physicians prescribed Bueno montelukast in 2019 and 2020, pharmacy records indicating that Bueno filled his montelukast prescriptions in Florida between 2019 and 2021, written discovery responses indicating that Bueno ingested montelukast in Florida, and deposition testimony stating that Bueno's symptoms began "a month or two" after he started taking montelukast in 2019. (Id. at 6–8.) Based on this evidence, Defendants argue that all of the conduct giving rise to Bueno's claims in this case occurred in Florida, not California. (See id. at 19.)

While Bueno does not shy away from the fact that he was prescribed montelukast in Florida, he ingested montelukast in Florida, and he was injured from montelukast in Florida, he nevertheless argues that his claims arise out of or relate to Defendants' California-based activities given that he is a California resident, he also ingested montelukast in California, he was also injured from montelukast in California, he received treatment for his claim-related injuries in California, and Defendants advertised, marketed, and sold Singulair in California. (See Doc. No. 66 at 5.)

Bueno has carried his burden to make a prima facie showing of jurisdictional facts. First, Bueno alleges that he is a resident of California. Bueno has a physical residence in San Diego, California. (Doc. No. 1-2 ¶ 7; Doc. No. 66-10 ¶¶ 3–5.) The gas and electric bills for Bueno's physical residence in San Diego, California are in his name. (Doc. No. 66-10 ¶ 6; Doc. No. 66-11 at 2, Ex. 1; Doc. No. 66-12 at 2, Ex. 2.) Moreover, Bueno is registered to vote in California and voted in the 2020 election. (Doc. No. 66-10 ¶ 7; Doc.

///

---

[3] Additionally, Defendants argue that Bueno's contention that he received a one-month sample pack of Singulair in 2011 from a California physician is irrelevant to the Court's jurisdictional inquiry. (Doc. No. 62-1 at 7, n.2.) The Court agrees. In his complaint, Bueno seeks damages for neuropsychiatric conditions that he attributes to his use of "brand and/or generic Singulair" from 2019 to 2021. (Doc. No. 1-2 ¶ 8.) Accordingly, Bueno's claims are not based on his alleged use of Singulair in 2011. Thus, Bueno's contention that he received a one-month sample pack of Singulair in 2011 from a California physician has no bearing on the Court's jurisdictional inquiry.

No. 66-13 at 2–3, Ex. 3.) Bueno also has a current California driver's license. (Doc No. 66-10 ¶ 8; Doc. No. 66-14 at 2, Ex. 4.) Further, Bueno testified that he spent more time in California than Florida in 2019, spent equal time in California and Florida in 2020, and spent more time in Florida than California in 2021. (Doc. No. 66 at 8.) Defendants attempt to refute Bueno's California residency by highlighting the fact that Bueno is listed on a lease for a property in Florida, he was issued a Florida driver's license in 2019, and his W-2 statements indicate his residence as being in Florida. (Doc. No. 68 at 9–10.) But a person may have several residences. See, e.g., Dawkins v. Jones, No. 21-cv-00287-TUC-DCB, 2022 WL 1498438, at *2 (D. Ariz. May 12, 2022) ("It is often said that a person may have several 'residences' but only one 'domicile.'"). And importantly, Bueno is only required to make a prima facie showing of jurisdictional facts to withstand dismissal and the Court must resolve all disputed facts in favor of Bueno. See In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d at 741.

      Second, while Bueno may not have been prescribed montelukast in California and he may not have fulfilled his montelukast prescriptions in California, Bueno remains steadfast that he regularly took montelukast in California from October 2019 to 2021 and suffered claim-related injuries in California. (Doc. No. 66-10 ¶¶ 12–13, 15.) Defendants take issue with Bueno's allegations, arguing that there is no evidence that Bueno took montelukast in California and that Bueno's injuries manifested in Florida because the onset of his symptoms took place "a month or two" after he first started taking montelukast in 2019. (Doc. No. 62-1 at 12; Doc. No. 68 at 9.) But Defendants' arguments ignore the fundamental nature of these types of pharmaceutical cases. While Bueno's alleged injuries may have started while Bueno was in Florida, it is possible that Bueno suffered injuries each and every time he took montelukast in California, as well as in Florida. And again, the Court must resolve all disputed facts in favor of Bueno. See In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d at 741. Furthermore, medical records indicate that Bueno received medical treatment in California for his claim-related injuries. (Doc. No. 67-1 at 1–3.) Similar to Ford, in which the resident plaintiffs were allegedly injured

by Ford vehicles in the forum states but were not injured by Ford vehicles that were designed, manufactured, or bought in the forum state, 141 S. Ct. at 1028, Bueno, a California resident, alleges that he ingested montelukast in California, was injured in California, and was treated for such injuries in California even though he may not have been prescribed montelukast in California or fulfilled his prescriptions in California.

Lastly, as explained in greater detail in the Court's order on Defendants' first motion to dismiss, (see Doc. No. 16 at 9–10), Bueno's allegations concerning Defendants' California-based activities are similar to those in Ford. Importantly, Bueno alleges that "[s]ince 2012, the Merck Defendants have continued to manufacture, market, and sell Singulair in California at least into 2020 and either the Merck Defendants or Organon did so after 2020." (Doc. No. 1-2 ¶ 18.) Bueno also alleges that Merck Defendants "engaged in an extensive campaign" to educate physicians about Singulair and misrepresented Singulair's safety during this campaign. (Id. ¶ 20.) Moreover, Bueno alleges that the Merck Defendants engaged in direct-to-consumer advertising in California through print advertisements in magazines and television advertising. (Id. ¶ 21.) These California-based activities are largely similar to the defendant's activities in Ford, which included the marketing, servicing, and selling of the same vehicle models that were involved in the underlying litigation. 141 S. Ct. at 1028. Further, Defendants had sufficient warning that they may be brought in court in California because Defendants sold Singulair in California for decades and continued to do so after Congress enacted the current warning label system in which generic drugs mirror the labels of their brand-name bioequivalent drugs. PLIVA, Inc. v. Mensing, 564 U.S. 604, 612–13 (2011). In sum, the Court concludes that Defendants' California-based advertising, marketing, and selling of Singulair—the product that remains at the heart of Bueno's claims—are jurisdictional activities under Ford that are within the "real limits" of the "relates to" element of the specific jurisdiction test. (See Doc. No. 16 at 9–10.) And as the Court explained in greater detail in its order on Defendants' first motion to dismiss, this is the case regardless of whether Bueno only ingested the generic form of Singulair, montelukast. (See id. at 6–10.)

Because Bueno's claims relate to Defendants' California-based activities, the Court has personal jurisdiction over Defendants. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is denied.

## III. CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss Bueno's claims for lack of personal jurisdiction.

**IT IS SO ORDERED.**

DATED: October 16, 2023

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT