Lynne M. Kizis, *Pro Hac Vice*
lkizis@wilentz.com
Kevin P. Roddy, CA State Bar No. 128283
kroddy@wilentz.com
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095
Telephone: (732) 855 6402

Kimberly Beck, *Pro Hac Vice*
kim@becklawcenter.com
BECK LAW CENTER
201 E. 5TH Street, Suite 1900
Cincinnati, Ohio
Telephone: (888) 434-2912

Shehnaz M. Bhujwala, CA State Bar No. 223484
bhujwala@boucher.la.com
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367-4903
Telephone: (818) 340-5400

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER BUENO, an individual, | Case No. 3:22-cv-00522-H-BLM |
| Plaintiff, | **DECLARATION OF DAVID HEALY M.D. IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.** |
| vs. | |
| MERCK & CO., INC., a New Jersey Corporation; MERCK SHARP & DOHME CORP., a New Jersey Corporation; ORGANON & CO., a Delaware Corporation; ORGANON LLC, a Delaware Limited Liability Company; and DOES 1-10, Inclusive, | Hearing Date: August 19, 2024<br>Hearing Time: 10:30 a.m.<br>Courtroom: 12A |
| Defendants. | Action Filed: March 3, 2022<br>Action Removed: April 15, 2022<br>Trial Date: November 12, 2024 |

Case No. 3:22-cv-00522-H-BLM
DECLARATION OF DAVID HEALY M.D. IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.
#14553111.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 2 -    Case No. Case No. 3:22-cv-00522-H-BLM
DECLARATION OF DAVID HEALY M.D. IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DAVID HEALY M.D.

#14553111.1

I, David Healy, M.D., hereby declare and state as follows:

1. I make this declaration in opposition to defendants' motion to exclude or partially exclude my opinions and testimony in this matter. I provided a report and disclosures in this case and a comprehensive curriculum vitae, and was deposed in this case and two other cases handled by the same plaintiffs' counsel, Parker and McLaughlin.

2. A substantial portion of my professional career has been devoted to drug induced toxicity and neuropsychiatric injuries including suicidality in clinical, academic, research, and consulting settings.

3. I have been asked to render expert opinions on drug induced suicides in government settings, including coroner's inquests. I have prepared reports for the UK government on 50 LSD cases. I have participated in approximately 40 inquests in the UK, Australia, and Ireland where I rendered an opinion that the following drugs caused suicide:

    paroxetine

    fluoxetine

    sertraline

    citalopram

    escitalopram

    venlafaxine

    mirtazapine

    doxycycline

    isoretinoin

    finasteride

risperidone

I was approached by government entities in an additional 100 cases where my opinion was that the drug did not likely cause or contribute to suicide.

4. I have been consulted to evaluate and render opinions in approximately 50 civil and criminal cases that the following drugs induced suicide, homicide, or assault and testified at trial with respect to:

olanzapine

risperidone

citalopram

duloxetine

fluoxetine

paroxetine

sertraline

venlafaxine

5. During decades of clinical practice, I have assessed and managed thousands of patients for the neuropsychiatric effects of drug toxicity.

6. In none of these matters was the presence of randomized controlled trials establishing the general effects of the drug in question necessary to reach an opinion within a reasonable degree of medical certainty as to whether drug toxicity induced a suicide or homicide.

7. In 1990, I encountered clinically two male patients who became suicidal on fluoxetine (Prozac), then a recently released serotonin reuptake inhibitor (SSRI). Using standard methods of establishing causality in the case of drug-induced adverse events, I drafted my analysis, which was published in a peer reviewed journal in 1991. Creaney W, Murray I, Healy D Antidepressant induced suicidal ideation.

Human Psychopharmacology 1991, 6, 329-332. I presented this information to the drug's manufacturer Lilly who denied any indication of this effect in clinical trials, and that they had no idea how Prozac could be causing this problem. I would go on to present my findings academically, conduct further investigation, author and publish numerous peer-reviewed papers, consult in numerous cases, and become recognized as a global expert in SSRI induced suicidality. See also Healy D (1994) The fluoxetine and suicide controversy CNS Drugs 1 223-231; Healy D Let Them Eat Prozac, New York University Press, New York 2004.

8.  I testified or submitted evidence at two FDA hearings and advocated for a Black Box Warning on antidepressants for suicide and violence. Further, I petitioned the EMA and FDA regarding adverse effects that linger after the drug is removed, namely post-SSRI Sexual Dysfunction, which led to its inclusion in drug labeling in Europe.

9.  Through the RxISK.org adverse event reporting website, I assess on average one neuropsychiatric effect per day, so over 4,000 neuropsychiatric adverse events since RxISK began, covering a wide range of drugs including antibiotics, antidepressants, antipsychotics, PPI's and Singulair®.

10.  The same experience and methodology I have employed throughout my decades of clinical, academic, and consulting work regarding SSRIs and other drugs was brought to bear on my evaluation and opinions in several Singulair®/montelukast cases.

11.  My opinions in this case are based on the accepted methodology of differential diagnosis and standard clinical causality methods such as Challenge-Dechallenge-Rechallenge. Merck does not seem to contest the propriety of these methodologies as further discussed below. See also FDA guidance issued in 2005 on Good Pharmacovigilance Practice and another on establishing links between treatments and adverse events that advocate the methods I have employed in this case.

Food and Drug Administration. Guide for Industry. Good pharmacovigilance practices. US Dept of Health and Human Services, FDA-2004-D-0041 March 2005 and Food and Drug Administration. Conducting a clinical safety review of a New Product Application. US Dept of Health and Human Services, February 2005. True copies of these FDA publications are attached at Exhibit A and B.

12. I have been consulted in eight (8) Singulair®/montelukast litigation cases. One did not seek a causation opinion, just general background on the drug and its neuropsychiatric adverse effects. In four (4) cases, I opined that Montelukast likely did not play a part in the plaintiffs' neuropsychiatric injuries. In three (3) cases, including this matter, I offered an opinion that Singulair®/montelukast toxicity caused neuropsychiatric injury.

13. I was involved in a Montelukast criminal case a decade ago that was not related to litigation. I hosted a series of posts on RxISK.org about efforts to get warnings put on Montelukast. RxISK.org is one of the leading adverse event reporting sites for dependence and withdrawal linked treatment problems. I further posted and commented on RxISK on dependence and withdrawal from Montelukast. None of this was related to litigation. I was familiar with Montelukast and its adverse effects long before I was consulted in this litigation.

14. In assessing whether Mr. Bueno's neuropsychiatric injuries were the result of drug induced toxicity from Singulair®/montelukast I employed the same process I have used in diagnosing and managing patients for decades and did not provide a "litigation driven opinion" but the application of decades of professional experience.

15. I reviewed all of Spencer Bueno's medical records available to me at the time of preparing my report and in addition I conducted two clinical interviews with him and reviewed deposition testimony from Spencer Bueno, his mother Elizabeth Bueno, His fiancée Christianne Scott, and several treating physicians. Subsequent to

the service of my report and disclosures, including during my deposition in this matter conducted February 21, 2024, additional materials were presented to me. Of particular relevance were the records of Dr, Schwartz, Dr, Schim, and Dr. Torabi and their respective deposition testimony. The additional medical records and testimony did not materially change my opinion that Mr. Bueno within a reasonable degree of medical certainty suffered a montelukast induced neuropsychiatric injury.

16. These additional records not only did not undermine my opinion but enhanced it in several respects. Merck seems to rely on Dr. Schim's records to conclude that Mr. Bueno had longstanding anxiety and cognitive issues well prior to taking montelukast. However, Dr. Schim's records an assessment of injuries Mr. Bueno had after a car crash. He does not document a continual or severe anxiety of the type that set in when Mr. Bueno was treated with montelukast. Anxiety or mood changes around the time of Mr. Bueno's father's death do not evidence a mental illness or neuropsychiatric disorder. As I explained in my deposition, everyone has periods of quotidian anxiety and they are not tantamount to, nor diagnostic of preexisting mental illness or neuropsychiatric injury.

17. Dr. Schwartz's records support a qualitative change in Mr. Bueno's condition after he started montelukast. That Dr. Schwartz saw him on three occasions over a few months and agreed psychiatric referral was warranted evidences a significant change. That he saw several physicians during this period attempting to get more alprazolam speaks to the same material change in his condition in contrast to period of time prior to treatment with montelukast where he was not experiencing, nor seeking medication for, panic attacks.

18. The use of clinical interviews where possible is fundamental to psychiatric practice, and training and experience in the field to assess for and test self-serving, untrue, or contradictory statements by patients is germane to the practice of psychiatry and the same principles help ensure reliable information in a litigation

setting. Mr. Bueno had memory problems and defendants have challenged his veracity. I interviewed Mr. Bueno with the same professional skepticism with which I approach all patients. To varying degrees everyone constructs narratives and clinically reaching an accurate assessment involves getting behind those narratives and not accepting everything a patient says at face value. These expected human behaviors do not render a clinical interview unreliable information as part of the basis for my opinion that Mr. Bueno sustained a montelukast induced neuropsychiatric injury.

19. In addition, Mr. Bueno has a memory problem typical of benzodiazepine medicines – in his case alprazolam (Xanax) and later clonazepam (Klonopin). These medicines can trigger what are called episodic memory problems (or sometimes autobiographical memory problems). Mr. Bueno gives clear accounts of these as detailed in my report and ascribed there to his benzodiazepine. Singulair, in contrast, does not cause this kind of problem but appears to cause what are called set-shifting problems, once easily demonstrated when we all had to remember phone numbers rather than have our phones do it for us. In the plaintiffs I have interviewed, Singulair also appears to cause specific memory problems where the occurrence of repetitive imagery or events interferes with our ability to remember specific instances of an image or event. There are no "objective tests" that would enhance my evaluation of whether Spencer Bueno's neuropsychiatric injuries were the result of drug induced toxicity from Singulair®/montelukast. Merck raises the Barnes akathisia rating scale but that focuses on an observable motor restlessness that antipsychotic drugs can trigger and is therefore not helpful in this case. People with drug induced akathisia capable of leading to suicide can score zero on the Barnes scale. The Hamilton Rating Scale for Depression (HAM-D) measures a series of items that both the illness of depression and its treatment can aggravate, such as suicide, anxiety, insomnia, libido and others. Worsening illness yields a high score but if the treatment is primarily what is causing the problem, the same answers should yield a low score.

The utility and reliability of scales like this hinge on clinical judgment. These instruments, per se, do not deliver objectivity. I have lectured on this issue extensively and knew the creator of the scale, Max Hamilton. As discussed in my deposition, I have specifically considered whether other treatments were playing a role in Mr. Bueno's symptoms. I consulted a family member about his condition after my interviews and suggested to Mr. Bueno to approach his treating psychiatrist Dr. Shah for alternative medical treatment to potentially rule out the role the SSRI Lexapro he was taking. He did in fact, under medical supervision discontinue the Lexapro and such did not materially change his symptoms.

20. The process of differential diagnoses in a drug-induced toxicity case is notably different from differential diagnoses for other medical diagnoses. For example, challenge and dechallenge, or challenge, dechallenge and rechallenge are regarded as definitive in drug induced toxicity cases, but do not play a role in medical diagnoses generally. This is the same differential diagnosis procedure I have employed since the 1990's which has been accepted by numerous courts and government entities.

21. Contrary to Merck's claims, I did not summarily discount the role of other drugs, medical conditions, and potential personal and family history of mental illness in causing Spencer Bueno's neuropsychiatric injuries, rather I applied the same methods to consider any role they could play. After doing so, within a reasonable degree of medical certainty montelukast induced neuropsychiatric injury presented the best explanation for his anxiety, irritability, mood changes, nightmares and night terrors and hitherto alien thoughts of violence and suicide, more fully explained in my report and deposition testimony.

22. Merck appears to misinterpret my testimony where I was describing seeing patterns of adverse effects among the cases of montelukast induced toxicity that I was reviewing, including the above-captioned matter. This was not "research" or

"case studies" I needed to form an opinion on drug-induced neuropsychiatric injury in these cases. My opinions were based upon generally accepted differential diagnosis methodology and assessment of causation of drug induced adverse events. Observations of patterns of neuropsychiatric impact are interesting and merit further study but are not essential to my opinion rendered here.

23.   Merck also misinterprets my comments on general causation vs. specific causation. General causation, for which I was not asked to render an opinion in this case, is of limited utility in assessing whether there is drug-induced toxicity causing neuropsychiatric injury in a given case and is not relied upon in clinical practice.

24.   Information available from the FDA which I reviewed, its actions with respect to Singulair/montelukast, and the actions of Spencer Bueno's treating psychiatrist Dr, Shah taking him off montelukast due to its contribution to his problems were more than enough to "rule in" Singulair in my differential diagnosis. That is the type of information regularly relied upon in assessing whether drug-induced injuries are present in a clinical setting or throughout my decades of consulting work.

25.   Annexed hereto at Exhibit C is a true copy of my curriculum vitae as provided with my report and disclosures in this matter.

1  I declare under penalty of perjury under the laws of the United States of
2  America that the foregoing is true and correct.
3  Executed on this 6th day of July, 2024, in Menai Bridge, Wales, United
4  Kingdom.

*David Healy*

_____
Signature

David Healy, M.D.
_____
Print Name

# TABLE OF CONTENTS OF EXHIBITS

**Page**

EXHIBIT A – FDA Pharmacovigilance ...................................................................1

EXHIBIT B – FDA Adverse Events ......................................................................25

EXHIBIT C – Dr. David Healy CV ......................................................................109