1  Lynne M. Kizis, *Pro Hac Vice*
     *lkizis@wilentz.com*
2  Kevin P. Roddy, CA State Bar No. 128283
     *kroddy@wilentz.com*
3  WILENTZ, GOLDMAN & SPITZER, P.A.
   90 Woodbridge Center Drive, Suite 900
4  Woodbridge, New Jersey 07095
   Tel:   (732) 855-6402
5
   Kimberly Beck, *Pro Hac Vice*
6    *kim@becklawcenter.com*
   BECK LAW CENTER
7  201 E. 5th Street, Suite 1900
   Cincinnati, Ohio
8  Tel:   (888) 434-2912

9  *Attorneys for Plaintiff*

10 Shehnaz M. Bhujwala, CA State Bar No. 223484
     *bhujwala@boucher.la.com*
11 BOUCHER LLP
   21600 Oxnard Street, Suite 600
12 Woodland Hills, CA 91367-4903
   Telephone: (818) 340-5400
13
   *Local Counsel for Plaintiff*
14

15

16                **UNITED STATES DISTRICT COURT**

17              **SOUTHERN DISTRICT OF CALIFORNIA**

18 SPENCER BUENO, an individual,          Case No. 3:22-cv-00522-H-BLM

19                    Plaintiff,          **PLAINTIFF'S STATEMENT OF
                                          UNDISPUTED FACTS IN SUPPORT
20        vs.                             OF PLAINTIFF'S OPPOSITION TO
                                          DEFENDANTS' MOTION FOR
21 MERCK & CO., INC., a New Jersey        SUMMARY JUDGMENT**
   Corporation; MERCK SHARP &
22 DOHME CORP., a New Jersey              Hearing Date:  August 19, 2024
   Corporation; ORGANON & CO., a          Hearing Time: 10:30 A.M.
23 Delaware Corporation; ORGANON LLC,     Courtroom:     12A
   a Delaware Limited Liability Company;
24 and DOES 1-10, Inclusive,

25                    Defendants.

26

27

28
       PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S
          OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule 56, Plaintiff Spencer Bueno, by and through his counsel of record, hereby submits his statement of uncontested facts in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

| UNCONTESTED FACT | SUPPORTING EVIDENCE |
|---|---|
| **a. Defendants** | |
| 1. Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp., Organon & Co., and Organon LLC (hereinafter "Defendants" or "Merck") are members of Merck Group. | Exhibit 1 [Excerpt from Defendants website, https://www.merck.com/media/company-fact-sheet/ last visited 7/8/24] |
| 2. With approximately 72,000 employees, Merck Group is ranked 67 of the Fortune 100. | Exhibit 1 [Excerpt from Defendants website, https://www.merck.com/media/company-fact-sheet/ last visited 7/8/24] |
| 3. That means it has about four times as many employees as the FDA | Exhibit 2 [Excerpt from FDA website, https://www.fda.gov/about-fda/ last visited 7/8/2024] |
| **b. Singulair** | |
| **PRECLINICAL TRIALS** | |
| 4. Merck began preclinical testing (animal tests) on a molecule called montelukast in the early 1990s. A study on rats showed that montelukast passed the blood-brain-barrier, and that the amount | Exhibit 3 [Pharmacology review for New Drug Application 20-829] |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| of montelukast in the rat brain increases over time. | |
| 5. Even George Philip, Executive Director, Medical Affairs at Merck, admits that he "would like to see a second study attempting to reproduce these findings or not…One study does not necessarily tell the whole story, especially when there are data hard to explain." Merck did not, however, conduct this second study. | Exhibit 4 [curriculum vitae of Dr. George Philip], Exhibit 5 [Deposition of Dr. Philip, 218-219] |
| 6. Defendants originally denied the findings that montelukast crosses the blood brain barrier, but eventually Merck admitted to the FDA that montelukast, when ingested orally, entered the brain. | Exhibit 6 [Excerpt of original submission of New Drug Application 20-829, dated 2/24/1997] |
| 7. A different rat study involved giving rats an intentionally toxic dose of montelukast to understand which part of the body fails at the toxic dose. | Exhibit 7 [Additional excerpt from pharmacology review for NDA 20-829] |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 8. For montelukast, it is the Central Nervous System. Despite these findings, Merck began clinical trials (human tests) without conducting further testing to determine potential effects of montelukast on the brain. | Exhibit 7 [Additional excerpt from pharmacology review for NDA 20-829] |

### CLINICAL TRIALS

| | |
|---|---|
| 9. Through the course of the pre-marketing clinical trials (trials on people) on montelukast, Merck never conducted any trials for the purpose of determining what effect montelukast had on the brain, nor did they conduct any trials for the purpose of determining whether people who were given montelukast suffered an increase incidence of neuropsychiatric events. | Exhibit 5 [Deposition of Dr. Philip, p. 155] |
| 10. Instead, the clinicians were instructed to only ask sopen-ended questions to study participants such as "how are you doing?" or "how are you feeling?" | Exhibit 5 [Deposition of Dr. Philip, 42-43; 69; 72] |

| | |
|---|---|
| 11. According to one of Merck's experts, on any given day 5% of adult Americans suffer from depression. The rate of depression is even higher for asthmatics. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp 136:5-140:2] |
| 12. However, only 0.4% of study participants in the placebo group and 0.36% of people in the montelukast group reported to clinicians that they were experiencing depression. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp 143:19-144:3]. |
| 13. Nonetheless, Merck never modified its study protocols to make study participants more comfortable reporting depression. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp 143:19-144:3]. |
| 14. A review of the study protocols reveals that typically "people with clinically significant neuropsychiatric illness….." were excluded from entering the clinical trials. | Exhibit 9 [Protocol 219], Exhibit 10 [Protocol 117] |
| 15. Dr. Philip agrees that if people with psychiatric illness are excluded from the clinical trials "we would not be able to measure a worsening of that condition in the clinical trial." In other words, | Exhibit 5 [Deposition of Dr. Philip, p. 102-103] |

| | |
|---|---|
| Merck simply did not undertake clinical trials to determine whether montelukast use exacerbates preexisting psychiatric illness. | |
| 16. Although FDA did not require additional testing, it would not have prevented Merck from conducting additional testing. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp 203:11-204:1]. |

### SINGULAIR HITS THE MARKET AND IT IS A BIG SELLER

| | |
|---|---|
| 17. In 1998, FDA approved montelukast for sale in the United States, under the brand name Singulair, indicated for "prophylaxis and chronic treatment of asthma, seasonal or perennial allergic rhinitis, and for the prevention of exercise-induced bronchoconstriction." | Exhibit 11 [Letter from FDA approving NDA 20-829] |
| 18. Singulair was a very successful drug for Defendants with worldwide sales as high as 1.2 billion dollars per year by 2001. | Exhibit 12 [SEC Filing] |

### ADVERSE EVENT REPORTS

| | |
|---|---|
| 19. FDA's Office of Safety and Epidemiology ("OSE") maintains | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp. 86:6-21] |

| | |
|---|---|
| the Federal Adverse Event Reporting System ("FAERS"), which is a system that allows individuals, doctors, or drug manufacturers to report potential adverse events. | |
| 20. Merck maintains a similar system, previously known as MARRS and now known as WAES, which allows Merck to take in reports of adverse events from individuals or physicians. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp. 86:6-21] |
| 21. Adverse event reports ("AERs") are used to identify a signal that there could be a connection between a drug and an adverse event. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp. 245:7-247:12]. |
| 22. Once a signal has been identified it's up to the manufacturer to evaluate it further. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp. 245:7-247:12]. |
| 23. As early as 1999, FDA began receiving reports in FAERS stating that someone used Singulair and experienced a neuropsychiatric injury. | Exhibit 13 [Transcript of 2019 Pediatric Advisory Committee Meeting] |
| 24. Merck also began receiving reports | Exhibit 8 [Transcript of Deposition of |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| indicating that a particular person was using montelukast and suffered a neuropsychiatric injury. | Dr. Lydia Gilbert-McClain, pp. 86:6-21] |
| 25. Merck has an obligation to report AERs it receives to the FAERS through an electronic system or as part of a package of "Periodic Adverse Event Reports" that Merck is required to submit to the Office of Safety and Epidemiology on a regular schedule. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp. 86:6-21] |
| 26. The only exception to this rule is that Merck is not required to report to the FDA "non-serious" events that are already on the Singulair label if the adverse event happened to someone outside of the United States. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, Vol. 2, 9:1-17] |
| 27. However, there is evidence that Merck did not provide all AERs to the FDA office of Surveillance and Epidemiology. In a report drafted in 2014 for the The Non-Prescription Advisory Committee of the FDA (not a part of the Office of Safety and | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, Vol. 2, 9:1-17] |

| | |
|---|---|
| Epidemiology), the committee discovered that there were 46,527 cases reported in Merck's adverse event reporting system. | |
| 28. There were only 8,815 cases reported in the FAERS and 5,342 cases reported to the World Health Organization ("WHO"). McClain 156:1-10. The Non-Prescription Advisory Committee report questioned why there was such a large discrepancy between the total amount of reports Merck had received and those that regulatory bodies have received, considering Merck's obligation to send most of its reports to FAERS. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, Vol. 2, 9:1-17] |
| 29. Adverse Event Reports continued to come into both FDA and Merck. As of May 31, 2019, 19,685 adverse events for montelukast were reported in FAERS (still considerably fewer than Merck had in 2014). | Exhibit 13 [Transcript of 2019 Pediatric Advisory Committee Meeting, p. 27] |
| 30. Of those, 52%, or 10,209 included | Exhibit 13 [Transcript of 2019 Pediatric |

| | |
|---|---|
| at least one adverse event in the nervous system disorder system organ class or psychiatric disorder system organ class. | Advisory Committee Meeting, p 27] |

### LABEL HISTORY PRIOR TO 2008

| | |
|---|---|
| 31. According to Merck's regulatory expert, manufacturers go to the FDA quite often to update their label. The FDA only goes to the manufacturer if FDA wants to add a black box warning or something like that. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp. 101:6-103:3] |
| 32. Dr. Lydia Gilbert-McClain, Merck's regulatory affairs expert testified that the manufacturer should suggest label revisions based on the adverse event reports they obtain. | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, pp. 117: 13-18]. |
| 33. "It's really the best judgment of the Merck personnel" to determine what changes should be made to the Singulair label. | Exhibit 5 [Deposition of Dr. Philip, p. 175] |
| 34. As alleged in the Motion for Summary Judgment, Merck went to the FDA numerous times to add a word, rearrange terms, or to | Exhibit 14 [September 21, 2001 CBE Notification] |

- 9 -
Case No. 3:22-cv-00522-H-BLM

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| replace a term with a synonym. For example, the September 12, 2001 CBE submission involves, in part, changing the word "seizure" to "seizures." | |
| 35. For example, Doc A, which is Exhibit 6 to Defendants' Statement of Facts states only that the revisions were made "based on WAES reports" and that the WAES reports were attached. | Exhibit 15 [August 1998 CBE Notification] |

**2008 CITIZEN'S PETITION**

| | |
|---|---|
| 36. In 2008, FDA received a Citizen's Petition from Parents United for Pharmaceutical Safety and Accountability. The Petition stated:<br>We have serious concerns about the safety of Singulair. Based on our own children's adverse experiences with this drug, a review of thousands of adverse reaction posts on medications.com, a review of 1726 FDA AERs Reported for Singulair published on | Exhibit 16 [February 3, 2009 correspondence from Parents United]. Exhibit 17 [January 17, 2009 Parents United correspondence] |

| | |
|---|---|
| patientsville.com, and review of case histories published in medical journals, we believe that the risks of Singulair outwight its benefits and FDA should not continue to allow its use in children. | |
| 37. The petition asked FDA to require the following updates and changes to Singulair's warnings – none of which are similar to those sought by Plaintiff here:<br><br>(1) Revise Singulair's labeling to include additional language regarding psychiatric disorders and symptoms, including the addition of a "black box" warning (boxed warning) about psychiatric disorders and the link to suicide;<br><br>(2) Require the distribution of a Medication Guide containing the information regarding psychiatric disorders and the link to suicide;<br><br>(3) Mandate "Dear Doctor" letters that discuss psychiatric disorders with Singulair use, including the link to | Exhibit 18 [FDA Response to Parents United] |

| | |
|---|---|
| suicide; | |
| (4) Require signatory acknowledgement, between the physician and patient, of the risks associated with Singulair use before issuing a prescription; | |
| (5) Require pharmacies to provide patients with information identical to FDA-approved labeling; | |
| (6) Require physicians to report adverse events regarding Singulair; and | |
| (7) Ensure all updated product labeling is communicated to consumers, physicans and patients. | |
| 38. FDA denied the Petition as to Requests 1-6, but granted t4he Petition as to Request 7. | Exhibit 18 [FDA Response to Parents United] |

## FDA ASKS MERCK TO WARN "SOME ADVERSE EVENT REPORTS ARE CONSISTENT WITH A DRUG-INDUCED EFFECT" IN 2009

| | |
|---|---|
| 39. In 2009, FDA asked Merck to change the label to say "some post-marketing reports involving Singulair **are** consistent with a drug-induced effect." | Exhibit 8 [Transcript of Deposition of Dr. Lydia Gilbert-McClain, Vol.2 pp 55:11-59:19] |
| 40. Merck convinced the FDA to | Exhibit 8 [Transcript of Deposition of Dr. |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| allow Merck to say "some post-marketing reports involving Singulair **appear** consistent with a drug-induced effect." | Lydia Gilbert-McClain, Vol.2 pp. 60:20-61:8. |

**THE 2009 META-ANALYSIS**

| | |
|---|---|
| 41. In 2009, Merck prepared a meta-analysis of the information about neuropsychiatric adverse events that its clinical trials captured, despite the fact that they were not designed to capture neuropsychiatric events. | Exhibit 19 [Draft of 2009 Philip Article] |
| 42. Merck conducted a complex 400-page analysis of that to the FDA and also submitted an article containing the same information for publication. | Exhibit 19 [Draft of 2009 Philip Article] |
| 43. Merck concluded that there was no increased risk of developing a neuropsychiatric injury in people who used montelukast. | Exhibit 19 [Draft of 2009 Philip Article] |
| 44. Indeed, Merck reported that Singulair was often safer that placebo. | Exhibit 19 [Draft of 2009 Philip Article] |
| 45. One of the comments that a Merck | Exhibit 5 [Deposition of Dr. Philip, p. |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| employee made on a draft of the proposed publication said "it seems that the manuscript may have a focus to downplay the FDA position too much." Dr. Philip did not agree. The article was submitted for publication without a revision to address that concern. | 190] Exhibit 19 [Draft of 2009 Philip Article] |
| 46. Once the article was submitted, one of the peer reviewers asked for justification for not analyzing the psych-SOC category alone. Merck submitted a general reply to this comment. Dr. Philip tewswtified that it could have been done, but he does not believe doing so would be scientifically or statistically sound. | Exhibit 5 [Deposition of Dr. Philip, p. 159] |

## DR. DIMA QATO' CRITIQUE OF THE 2009 META-ANALYSIS AND HER OPINION THAT MERCK SHOULD HAVE KNOWN SOONER

| | |
|---|---|
| 47. Dr. Qato issued a report criticizing, among other things, that Merck knew of should have known that the incidence of neuropsychiatric events were | Exhibit 20 [Expert Report of Dr. Dima Qato] |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| much higher than what Merck reported to FDA. | |
| 48. Although the clinical trials were not designed to detect neuropsychiatric adverse events, some neuropsychiatric adverse events were identified. Merck performed a 400-page analysis of this information, but as Dr. Qato demonstrated, an epidemiologist could perform a simple analysis in five to ten minutes to see this data is flawed. But Merck never did that. | Exhibit 21 [Transcript of Deposition of Dr. Dima Qato, pp 42-44] |
| 49. Dr. Qato compared what Merck knew or should have known with what was on the Singulair label and determined that the label was inadequate. | Exhibit 20 [Expert Report of Dr. Dima Qato] |
| **2014 HEARING OF THE NON-PRESCRIPTION ADVISORY COMMITTEE** | |
| 50. After the patent for montelukast expired in August 2012, and the generics flooded the market, Merck sought FDA approval to sell Singulair over-the-counter. | Exhibit 13 [Transcript of 2019 Pediatric Advisory Committee Meeting, p. 17] |
| 51. In response to Merck's request, the Nonprescription Drugs Advisory | Exhibit 13 [Transcript of 2019 Pediatric Advisory Committee Meeting, p. 17] |

| | |
|---|---|
| Committee held a meeting on May 2, 2014. | |
| 52. Committee Member Pledge stated, "I have a real concern regarding neuropsychiatric events." | Exhibit 22 [Transcript of 2014 hearing of the Nonprescription Advisory Committee, p. 260] |
| 53. Committee Member Platts-Mills echoed Ms. Pledge's concerns, stating "Yes. The neuropsychiatric issue raises obviously very significant questions, which are really important." | Exhibit 22 [Transcript of 2014 hearing of the Nonprescription Advisory Committee, p. 262] |
| 54. Committee Member Roumie indicated that the FAERS database may demonstrate a signal. "There does potentially appear to be a signal for the neuropsychiatric events, but currently the state of, I guess, our understanding is there's really not enough evidence here to either back up that it is truly safe or truly not safe." | Exhibit 22 [Transcript of 2014 hearing of the Nonprescription Advisory Committee, p. 265-266] |
| 55. Committee Members Towbin and Gerhard point out the lack of interest in designing the clinical trials to capture neuropsychiatric events. Dr. Towbin stated: "I | Exhibit 22 [Transcript of 2014 hearing of the Nonprescription Advisory Committee, p. 275] |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| concur strongly that we really just don't know. The strongest data that one could rely on to determine the presence of these would come from clinical trials. And, it's very clear, both from the industry and the FDA side, that the trials were no constructed in a way that would allow us to get a handle on that. | |
| 56. Similarly, Dr. Gerhard said, "I have two points regarding the neuropsychiatric events. I think from my perspective, we really just don't know very much about them. From the clinical trials, as Dr., I believe, Towbin pointed out, we really haven't assessed these events in the clinical trials." | Exhibit 22 [Transcript of 2014 hearing of the Nonprescription Advisory Committee, p. 263] |

## **2020 BLACK BOX WARNING**

| | |
|---|---|
| 57. On March 3, 2020, FDA ordered Merck to include a black box warning on Singulair's label. | Exhibit 23 [March 3, 2022 FDA Press Release] |
| 58. That same day FDA issued a press release announcing that it is taking this step because "many health care professionals and | Exhibit 23 [March 3, 2022 FDA Press Release] |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| patients/caregivers are not aware of the risk" of neuropsychiatric injuries. | |
| 59. Moreover, "for allergic rhinitis, also known as hay fever, we have determined that montelukast should be reserved for those who are not reated effectively with or cannot tolerate other allergy medicines." | Exhibit 23 [March 3, 2022 FDA Press Release] |
| 60. For those with asthma, montelukast may still not be the right option. "[H]ealth care professionals [should] consider the benefits and risks of mental health side effects before prescribing montelukast." | Exhibit 23 [March 3, 2022 FDA Press Release] |
| 61. FDA also required Merck to create a new patient Medication Guide "to educate patients and parents/caregivers about the medicine." | Exhibit 23 [March 3, 2022 FDA Press Release] |
| 62. On April 29, 2020, Merck submitted a proposed Black Box Warning, which was approved by FDA. | Exhibit 24 [Singulair label with Black Box Warning] |

| | |
|---|---|
| 63. The FDA required Merck to add the Black Box Warning to its label on March 4, 2020. The label revision was approved and took effect April 29, 2020. In March and April 2020 medical providers across America – particularly pulmonary specialists – were focused on Covid. Nonetheless, Merck took no action, such as sending a "Dear Doctor" letter to prescribers to make sure they were aware of the newly-added Black Box Warning. | Exhibit 25 [Excerpt from FDA website regarding Covid, https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/faqs-what-happens-euas-when-public-health-emergency-ends#:~:text=The%20HHS%20Secretary%20issued%20a%20determination%20under%20section%20564%20of,affect%2C%20national%20security%20or%20the] |

**c. Plaintiff Spencer Bueno**

| | |
|---|---|
| 64. Plaintiff Spencer Bueno was born in California in 1978, and has lived in California his entire life. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 26-39] |
| 65. He saw advertisements for Singulair in California. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 13-19] |
| 66. In 2019, he spent a good deal of his time at the Florida home of his girlfriend (now fiancé), Christiane Scott, while still maintaining his California residence. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 40] |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 67. He was treated by Dr. Pablo Arango in Pompano Beach, Florida for his allergic rhinitis, who prescribed him Singulair. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 83] |
| 68. He was familiar with Singulair, in part, because of the advertisements he saw in California. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 13-19] |
| 69. He continued to take Singulair until early 2021, prescribed first by Dr. Arango and his partner Dr. Salgado, then by Dr. Schwartz. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 193, 227, & 261] |
| 70. He continued to take Singulair until early 2021, prescribed first by Dr. Arango and his partner Dr. Salgoto, then by Dr. Schwartz. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 236] |
| 71. While taking Singulair, he traveled back and forth between his home in California and Florida. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 28] |
| 72. He was a resident of California and took his montelukast pills in both California and Florida. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 28] |
| 73. About a month after he started taking montelukast he and his family noticed a change. He became hostile and aggressive. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 149] |

| | |
|---|---|
| 74. He eventually spoke to his counselor, conducted some of his own research, and discovered Singulair could be the cause of his injuries. He took himself off Singulair in the middle of 2021. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 236] |
| 75. Nonetheless, as further described by Dr. David Healy, even though Mr. Bueno has stopped using Singulair, he continues to suffer its effects. | Exhibit 28 [Expert report of Dr. David Healy]. |
| 76. He lost his job due to anxiety. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 300] |
| 77. Then, he attempted suicide by jumping from a moving vehicle. | Exhibit 26 [Deposition transcript of Plaintiff Spencer Bueno, p. 128, 147-148] |
| 78. He continues to suffer injuries from his Singulair use, but he is now recovering with treatment, which he receives from a counselor in California. | Exhibit 28 [Expert report of Dr. David Healy]. |
| 79. Dr. Healy opines that Spencer Bueno's montelukast use caused his neuropsychiatric injuries. | Exhibit 28 [Expert report of Dr. David Healy]. |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### d. Plaintiff's Prescriber – Dr. Pablo Arango

| | |
|---|---|
| 79. Dr. Arango began prescribing Singulair to Plaintiff, Spencer Bueno in 2019 | Exhibit 29 [Declaration of Dr. Arango] |
| 80. In 2019, the Prescriber's Information stated in pertinent part:<br><br>HIGHLIGHTS OF PRESCRIBING INFORMATION<br><br>*    *    *<br><br>"[n]europsychiatric events have been reported with SINGULAIR. Instruct patients to be alert for neuropsychiatric events. Evaluate the risks and benefits of continuing treatment with SINGULAIR if such events occur (5.4 and 6.2)."<br><br>*    *    *<br><br>WARNINGS AND PRECAUTIONS | Exhibit 27 [2019 Singulair label] |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Neuropsychiatric Events
Neuropsychiatric events have been reported in adult, adolescent, and pediatric patients taking SINGULAIR. Post-marketing reports with SINGULAIR use include agitation, aggressive behavior or hostility, anxiousness, depression, disorientation, disturbance in attention, dream abnormalities, dysphemia (stuttering), hallucinations, insomnia, irritability, memory impairment, obsessive-compulsive symptoms, restlessness, somnambulism, suicidal thinking and behavior (including suicide), tic, and tremor. The clinical details of some post-marketing reports involving SINGULAIR appear consistent with a drug-induced effect. Patients and prescribers should be alert for neuropsychiatric events. Patients should be instructed to notify their prescriber if these changes occur. Prescribers should carefully evaluate the risks and benefits of

| | |
|---|---|
| continuing treatment with SINGULAIR if such events occur [see Adverse Reactions (6.2)] | |
| 81. If the warnings regarding neuropsychiatric side effects were stronger at the time Dr. Arango prescribed Singulair to Spencer Bueno, he would have shared the stronger warning with Spencer Bueno | Exhibit 29 [Declaration of Dr. Arango] |
| 82. If the warning had said that some of the adverse event reports are consistent with a drug-induced effect, he would like not have prescribed Singulair to Spencer Bueno. | Exhibit 29 [Declaration of Dr. Arango] |
| 83. If the Singulair Prescribing Information contained a contradiction for allergic rhinitis for people who felt suicidal while using Singulair, he would like not have prescribed Singulair to Spencer Bueno. | Exhibit 29 [Declaration of Dr. Arango] |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DATED:  July 8, 2024                    BECK LAW CENTER


                                        By:     /s/ Kimberly L. Beck
                                                Kimberly L. Beck
                                                Email: kim@becklawcenter.com

                                                *Attorneys for Plaintiff*