# EXHIBIT 104

Exhibit 104
61

Page 1

```
 1        UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF MASSACHUSETTS
 2                    - - -
 3   RICHARD MCLAUGHLIN,      : C.A. 4:22-CV-40041-TSH
             v.               :
 4   MERCK & CO., INC.,       :
     MERCK SHARP & DOHME      :
 5   CORP., ORGANON & CO.,    :
     and ORGANON, LLC.        :
 6         Defendants.        :
 7
                             - - -
 8
                  FEBRUARY 26, 2024
 9
                             - - -
10
11
12              Videotape deposition of DIMA
13   M. QATO, PharmD, MPH, PhD, taken pursuant
14   to notice, was held at the law offices of
15   Wilentz, Goldman, & Spitzer, P.A., 90
16   Woodbridge Center Drive, Suite 900,
17   Woodbridge, New Jersey 07095, commencing
18   at 9:34 a.m., on the above date, before
19   Amanda Dee Maslynsky-Miller, a Realtime
20   Reporter and Certified Court Reporter.
21
22                    - - -
        GOLKOW LITIGATION SERVICES, INC.
23      877.370.3377 ph| 917.591.5672 fax
                deps@golkow.com
24
```

```
 1   APPEARANCES:
 2
 3         WILENTZ, GOLDMAN & SPITZER P.A.
           BY: ANGELO J. CIFALDI, ESQUIRE
 4         BY: ZACHARY A. STAHL, ESQUIRE
           90 Woodbridge Center Drive
 5         Suite 900 Box 10
           Woodbridge, New Jersey 07095
 6         (732) 636-8000
           acifaldi@wilentz.com
 7         zstahl@wilentz.com
           Representing the Plaintiff
 8
 9
10
           VENABLE LLP
11         BY: STEPHEN E. MARSHALL, ESQUIRE
           750 East Pratt Street
12         Suite 900
           Baltimore, Maryland 21202
13         (410) 244-7400
           semarshall@Venable.com
14         Representing the Defendant,
           Merck & Co.
15
16
17
           KING & SPALDING LLP
18         BY: HEATHER M. HOWARD, ESQUIRE
           1180 Peachtree Street, NE
19         Suite 1600
           Atlanta, Georgia 30309
20         (404) 572-4600
           hhoward@kslaw.com
21         Representing the Defendant,
           Merck & Co.
22
23
24
```

```
 1   APPEARANCES: (Continued)
 2   VIA ZOOM:
 3
 4
         BECK LAW CENTER
 5       BY: KIMBERLY BECK, ESQUIRE
         201 East 5th Street
 6       Suite 1900
         Cincinnati, Ohio 45202
 7       (888) 434-2912
         kim@becklawcenter.com
 8       Representing the Plaintiff
 9
10
11
     ALSO PRESENT:
12   Michael Gianoukakis
13
                   - - -
14
15
16
17
18
19
20
21
22
23
24
```

Page 235

1  like, in terms of clinical trial
2  protocols, you know, different protocols.
3  But they weren't kind of the complete
4  data.  We never really got, especially
5  for some of the select studies, the raw
6  data.
7              But that's something that
8  would help to re-analyze, using more
9  robust methods that are based on
10  patient-level data, logistic regression
11  or incident rate ratios for -- given it's
12  longitudinal.
13       Q.    Did you use a more robust --
14  more robust method in analyzing the data?
15       A.    I just used these immediate
16  case control estimates.
17       Q.    Did you attempt to replicate
18  the statistical methodology that the FDA
19  wanted Merck to employ to evaluate the
20  data?
21              ATTORNEY CIFALDI:
22         Objection.
23              You can answer.
24              THE WITNESS:  I don't know

Page 236

1            what the statistical analysis plan
2            was.  And if I did, I would not be
3            able to, because I don't have all
4            the data I need, including the
5            inclusion/exclusion criteria that
6            were used.
7    BY ATTORNEY MARSHALL:
8            Q.    Did you ask for all that?
9            A.    I don't know if I asked for
10   all of that.  I asked for some raw
11   patient-level data.  But I never really
12   planned on re-analyzing the data myself.
13           Q.    Have you ever -- how would
14   you describe this particular analysis?
15   What would be the descriptor?
16                 And I'm referring to
17   Exhibit-5.
18           A.    Crude estimates, odds ratio
19   and incidence estimates.
20           Q.    Have you ever utilized this
21   crude estimate odds ratio incidence in
22   evaluating multiple different clinical
23   trial data?
24           A.    I haven't, no.

Page 249

1   on the FDA approval package?
2           Q.   They've all been produced in
3   this litigation, that's why they have
4   Bates on them.
5           A.   So they're not in the public
6   domain?
7           Q.   They're available to you and
8   the plaintiffs' lawyers and have been for
9   more than a year.
10          A.   I haven't seen this.
11          Q.   They were specifically
12  requested by plaintiffs' counsel,
13  actually.
14               So you're saying that you
15  have not been provided with the
16  communications between Merck and the FDA
17  related to the analysis of the
18  behavior-related adverse events?
19          A.   I'm saying I haven't seen
20  them or reviewed them.
21          Q.   Do you think you were
22  provided them and you just chose not to
23  review them?
24          A.   If I -- I -- I don't know.

1                    CERTIFICATE
2
3
4           I HEREBY CERTIFY that the
5    witness was duly sworn by me and that the
6    deposition is a true record of the
7    testimony given by the witness.
8
9
10
         Amanda Maslynsky-Miller
11       Certified Realtime Reporter
         Dated:  March 7, 2024
12
13
14
15
16
17            (The foregoing certification
18   of this transcript does not apply to any
19   reproduction of the same by any means,
20   unless under the direct control and/or
21   supervision of the certifying reporter.)
22
23
24